454 So.2d 1273 (1984)
Lang MOORE, Jr., et ux., Plaintiff-Appellants,
v.
The AETNA CASUALTY AND SURETY COMPANY, et al., Defendant-Appellees.
Bobbie Jean MOORE, Plaintiff-Appellant,
v.
The AETNA CASUALTY AND SURETY COMPANY, et al., Defendant-Appellees.
MARYLAND CASUALTY COMPANY, Plaintiff-Appellant,
v.
The AETNA CASUALTY AND SURETY COMPANY, et al., Defendant-Appellees.
Nos. 16380-CA to 16382-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*1275 Campbell, Campbell & Johnson by James M. Johnson, Minden, for plaintiffs-appellants.
Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for Star Furniture of Minden, Inc. and Aetna Cas. & Sur. Co.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for Fedders Corp.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for United Distributing of Shreveport.
Cook, Yancey, King & Galloway by Charles G. Tutt, Shreveport, for Kenneth Warren d/b/a Warren's Appliance Service and Commercial Union Ins. Co.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Plaintiffs, Mr. and Mrs. Lang Moore, Jr., filed suit for the loss of their home by fire, joining as defendants both the manufacturer and seller of an air conditioner which plaintiffs contend was defective and caused the fire. Mr. and Mrs. Lang Moore, Jr. also brought suit against a third defendant for allegedly advising them to install an improper circuit breaker which causally contributed to the fire. Plaintiff, Bobbie Jean Moore, daughter of Mr. and Mrs. Lang Moore, Jr., brought suit against the same defendants for the death of her minor child in the fire. Plaintiff, Maryland Casualty Company, brought suit against the defendants to recover the insurance proceeds paid out by it under an insurance policy covering the home of Mr. and Mrs. Lang Moore, Jr. The claims of all the plaintiffs against all the defendants were consolidated for purposes of trial. The trial court granted judgment in favor of all the defendants, and against the plaintiffs. We affirm.
Principal plaintiffs in this cause are Lang Moore, Jr., a 53 year old construction worker residing in Minden, and his wife, Bertha Lee Moore. Mr. and Mrs. Lang Moore, Jr. owned the house at 913 Wood Street which was destroyed by fire. Plaintiff Bobbie Jean Moore is the daughter of Mr. and Mrs. Moore, and resided with them at 913 Wood Street at the time of the fire. Bobbie Jean's eight year old daughter, Roshanda, died in the fire which destroyed Mr. and Mrs. Moore's home. Plaintiff Maryland Casualty Company is the insurance company that provided fire insurance coverage to Mr. and Mrs. Moore on their home, and paid policy benefits to the Moores. Maryland Casualty was subrogated to Mr. and Mrs. Moore's right to receive compensation for the loss of their home to the extent of Maryland Casualty's reimbursement.
Defendants in this cause are Fedders Corporation (hereinafter referred to as Fedders), the manufacturer of the allegedly defective air conditioner, and its insurer, ABC Insurance Company; and Star Furniture of Minden, Inc., (hereinafter referred to as Star), who sold the air conditioner to plaintiffs, and its insurer, Aetna Casualty and Surety Company. Also joined as defendants were Kenneth Warren, the self-employed repairman who inspected the air conditioner prior to the fire, and his insurer, Commercial Union Insurance Company.
On July 14, 1980, Lang Moore, Jr. purchased from Star Furniture a new air conditioner manufactured by Fedders which was delivered on July 15 by two employees of Star Furniture. The two employees plugged the air conditioning unit into an electrical outlet at the Moore residence. However, while the fan operated, the compressor would not activate, and the air conditioner therefore simply emitted warm air. The following day, July 16, the same two employees returned to the Moore residence in the morning, picked up the air conditioner, and brought it back to Star.
*1276 That same day, Keith Madden, the manager and proprietor of Star Furniture, tested the unit at Star. It operated perfectly there.
Later that same afternoon, July 16, Lang Moore, Jr. and his son came to Star to speak with Keith Madden about the status of the air conditioner. Madden related to Mr. Moore that the air conditioner was functioning properly and in good condition, and had performed satisfactorily when plugged in at Star. Madden further explained to Mr. Moore that the air conditioner had not operated properly at the Moore residence because the air conditioner was not receiving sufficient voltage, or because there was something wrong with the electrical system or wiring in Mr. Moore's house. Madden then notified Mr. Moore that Star was going to return the air conditioner to the Moore's house. Mr. Moore did not object. Shortly thereafter, on the afternoon of July 16, Star's employees returned the same Fedders air conditioning unit to the Moore residence.
Later on the afternoon of July 16, Mr. Moore called Mr. Madden to renew his complaint that the air conditioning unit was not operating properly at the Moore residence. Mr. Madden repeated to Mr. Moore that the air conditioner was in operable condition, and that its improper performance at the Moore residence was a result of defective wiring or insufficient voltage at the Moore residence. Mr. Madden accordingly advised Mr. Moore to obtain the services of an electrician.
Repairman Kenneth Warren went to the Moore residence on July 17 at the request of Star Furniture's manager, Keith Madden. At the Moore residence, Mr. Warren found that when the air conditioner was plugged in, the fan would activate, but the compressor would not function. As electrical surges would approximate activating the compressor, the fan would slow. When the compressor would "kick off," the fan would resume its normal speed. Mr. Warren subsequently employed a voltage meter in the Moore residence and thereby determined that there was insufficient voltage in the Moore's electrical system to power the air conditioner. Mr. Warren further determined that a severe drop in the voltage present in the circuit occurred when the air conditioner was turned on. Mr. Warren ultimately concluded that "something was wrong with the wiring" in the Moore's residence, unplugged the air conditioner, counseled the Moores not to plug the unit back in, and advised them "[t]o get an electrician."
Subsequent to Mr. Warren's examination of the air conditioner and circuitry at the Moore residence, Lang Moore, Jr. replaced the 20 amp breaker, which regulated the circuit into which the air conditioner was plugged, with a 30 amp breaker. The 30 amp breaker was installed in an apparent attempt to allow greater voltage to flow through the circuit which fed the receptacle into which the air conditioner was plugged. The air conditioner was plugged into a receptacle below the living room picture window at the front of the Moores' brick house. This receptacle was fed by an electrical circuit of 20 amp electrical wire which wound from the utility room at the back of the Moore's house where the breaker box was located, to the living room located at the front, or "street side," of the residence. There were other electrical appliances located in the Moore's living room in addition to the air conditioner. However, the air conditioner was apparently the only appliance plugged into the receptacle located beneath the picture window of the Moore's living room.
Despite the replacement of the 20 amp breaker with a 30 amp breaker, the air conditioner still did not function properly at the Moore house. When plugged in and turned on, the unit's fan would operate, but the unit's compressor would not activate or generate cold air, and the air conditioner accordingly only blew out hot air.
At 9:00 p.m., on the night of July 28, 1980, all of the residents of the Moore household were home, save David Moore, Lang Moore's 23 year old son. An electrical storm arose that night, and all of the members of the Moore household present *1277 retired early, around 9:00 p.m. Before going to bed, the Mooresat the behest of their fatherunplugged all appliances in the house, except for the deep freeze and refrigerator.
David Moore returned to the Lang Moore household later that night, at approximately 1:00 a.m. He plugged in the air conditioner, and turned it on, in a futile attempt to get cooled off. The fan operated, but the compressor still failed to activate. David Moore nevertheless left the air conditioner plugged in and turned on, and went to bed in the bedroom which he shared with his brothers.
At roughly 2:00 a.m., an hour later, members of the Moore residence were awakened by the smoke from a fire which had broken out in the living room at the front of the house and was rapidly spreading. The Moore family successfully escaped the fire in the living room at the front of the house by slipping out their bedroom windows which opened up to the backyard of the residence. However, Roshanda Moore, the eight year old granddaughter of Lang Moore, Jr. and his wife Bertha, and the daughter of Bobbie Jean Moore, became lost in the smoke and confusion surrounding the Moores' evacuation of their house. She ultimately died in the ensuing blaze despite the attempts of Lang Moore, Jr., David Moore and firefighters to save her.
Maryland Casualty Co. subsequently paid $21,900 to Lang Moore, Jr., for the total destruction of his home by fire. This amount reflected the $22,000 policy limit for total loss of the home, less a $100 deductible. This payment left the plaintiffs uncompensated for their household belongings, virtually all of which had been consumed in the conflagration. The legal actions previously outlined ensued.
The claims of all the plaintiffs against all the defendants were consolidated for the purpose of trial which commenced before a jury on November 7, 1983. At the close of plaintiff's case, the trial court granted a directed verdict against the plaintiffs and in favor of Fedders and Star Furniture and their respective insurers, on the grounds that the plaintiffs had not established grounds upon which recovery against these defendants could be based. The trial court also sustained a peremptory exception in favor of repairman Kenneth Warren and his insurer, on the grounds that any claims against Mr. Warren had prescribed prior to the filing of suit against him.
Plaintiffs urge two major contentions on appeal. Plaintiffs first contend that the trial court erred in granting a directed verdict in favor of Fedders and Star Furniture and their respective insurers, on the plaintiffs' defective product claim. Plaintiffs assert in the second instance that the trial court erred in determining that plaintiffs' claims against Kenneth Warren had prescribed, and in awarding judgment in Warren's favor on that basis.

I.

The Granting of a Directed Verdict In Favor of Fedders and Star Furniture
LSA-C.C.P. Art. 1810 provides that a party may move for a directed verdict at the close of the evidence offered by his opponent. The motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences redound so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary conclusion. Roberts v. St. Bernard Parish School Board, 427 So.2d 676 (La. App. 4th Cir.1983), writ denied, 433 So.2d 1053 (La.1983); King v. Commercial Union Ins. Co., 425 So.2d 358 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 146 (La. 1983).
It is axiomatic that the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiffs' claims. The substantive law applicable in this case is products liability law. The Louisiana Supreme Court clearly enunciated the fundamental precepts of products liability in its landmark decision in Weber v. Fidelity Casualty Ins. Co. of *1278 New York, 250 So.2d 754 (La.1971). As was made clear in Weber, the essential elements of proof in a products liability case are proof of the defective or unreasonably dangerous character of the product, and proof that plaintiff's injuries were caused by the product's defects.
The trial court did not err in granting a directed verdict in favor of Fedders and Star Furniture. This is because the plaintiff simply did not present proof whicheven after reasonably resolving evidentiary inferences in plaintiffs' favor would enable a juror to reasonably conclude either that the air conditioner was defective or that it had caused the fire.
Clifford Frey, the electrical engineer whose expert testimony went to the crux of the issue of defect and causation, was plaintiffs' own witness. However, Mr. Frey expressly declined to opine that the air conditioner was defective. The nearest approximation to evidence that the air conditioner was defective was Mr. Frey's rumination that there was a possibilitybut not a probabilitythat the air conditioner became defective through constant overloading of the electrical circuits of the Moore residence. Mr. Frey was explicit in his refusal to state that the air conditioner was probably defective as manufactured. No other witness presented by plaintiff stated that the air conditioner was defective, or even probably defective. Furthermore, Mr. Frey unequivocally testified that there was virtually no question that the fire was started by the overloading or overfusing of Lang Moore's electrical circuits with more voltage than the circuits were designed to conduct.
Mr. Frey explained that the regulation of a 20 amp circuit with a 30 amp breaker violated the most fundamental principles of electrical wiring. The installation of a 30 amp breaker on a 20 amp circuit caused an overload of the 20 amp wiring, placing a greater burden on the wiring than it was designed to bear. He further clarified that this type of overloading deteriorates the insulation which encapsules electrical wiring, and allows electricity generated heat from the wire to escape into the surrounding wall. Mr. Frey testified that this phenomenon of circuit overloading created a "heat spot," and caused the tragic fire to break out in the wall near the air conditioner.
The testimony of Mr. Frey, just discussed, was the sole evidence in plaintiff's case addressed to defect and causation. The granting of the directed verdict here appealed was clearly not error in view of the factual evidence and the testimony of Mr. Frey.

II.

The Sustaining of a Peremptory Exception in Favor of Kenneth Warren
The basis of plaintiffs' claims against Repairman Kenneth Warren and his insurer was their factual allegation that he gave them ill-conceived advice to place a 30 amp breaker on a 20 amp circuit. This act of misconduct allegedly occurred on July 17, 1980, when Kenneth Warren went to the Moore residence to inspect their air conditioner. Suit was filed against Kenneth Warren on January 20, 1983, long after suit had been filed against the other defendants. The trial court sustained a peremptory exception of prescription filed by Mr. Warren.
Actions in tort prescribe in one year "from the day injury or damage is sustained." LSA-C.C. Art. 3492. Over a year had elapsed between the time plaintiffs' losses were sustained on July 28, 1980, and the time suit was filed against Kenneth Warren on January 20, 1983. Thus, any action in tort against Kenneth Warren had prescribed.
It is further germane that plaintiffs may not avail themselves of the timely interruption of prescription with respect to Star and Fedders to interrupt prescription with respect to Kenneth Warren, under the theory that Star and Fedders are solidary co-obligors of Kenneth Warren. See LSA-C.C. Art. 2097. Star and Fedders are not obligors of the putative obligation to compensate *1279 plaintiffs' fire losses, having been correctly found free of liability for said losses. Because Star and Fedders are not obligors of the putative obligation to compensate plaintiffs' fire losses, they could not logically be deemed to be Kenneth Warren's solidary co-obligor with respect to said putative obligation. Because Star and Fedders are not solidary co-obligors of Kenneth Warren, the interruption of prescription with respect to Star and Fedders does not effect an interruption of prescription with respect to Kenneth Warren.
Plaintiffs did not have any contractual privity with Kenneth Warren which could serve as the predicate of an action in contract, and avail plaintiffs a longer prescriptive period of ten years. LSA-C.C. Arts. 3499, 3500. However, the record reflects that Kenneth Warren had a contractual arrangement with Star and Fedders to repair air conditioners manufactured and sold by them. Plaintiffs assert, on the basis of this contractual arrangement, that the respective contractual arrangements between Kenneth Warren on the one hand and Star and Fedders on the other, constituted stipulations pour autruicontracts which inured to the benefit of the Moores as third party beneficiaries. They contend that the breach of these stipulations pour autrui conferred upon them, as third party beneficiaries, an action in contract, which prescribes in ten years rather than one.
Plaintiffs are correct in asserting that where two parties enter into a contract to construct or repair an edifice owned by a third party, and that contract is ultimately designed to benefit the third party/owner, the third party/owner has an action in contract for the breach of that contract. LSA-C.C. Arts. 1890, 1902. State ex rel Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976); Abney v. Allstate Ins. Co., 442 So.2d 590 (La.App. 1st Cir.1983). However, the evidence adduced at trial does not support the contention that plaintiffs possess an action in contract as third party beneficiaries. This is because the alleged actions of Kenneth Warren which form the basis for plaintiffs' action against him are totally outside the scope and terms of Kenneth Warren's contractual arrangements with Star and Fedders, and therefore do not constitute a breach of said contracts.
If Kenneth Warren had negligently repaired plaintiffs' air conditioner, this dereliction of duty could well have constituted a breach of his agreements with Star and Fedders, and conferred upon the plaintiffs an action in contract as third party beneficiaries of the contract. However, there is no evidence or claim that Kenneth Warren negligently repaired plaintiffs' air conditioner or omitted an attempt at repair when the circumstances indicated the advisability of repair. The record amply demonstrates that Mr. Warren did not undertake a repair of the air conditioner; and further establishes that no such undertaking was called for, insofar as the cause of the unit's malfunctioning was not in the air conditioner itself, but in the Moores' electrical system. The factual basis of plaintiffs' claim against Kenneth Warren is instead the allegation that Warren gave gratuitous, ill-advised and harm-causing advice to them to replace the 20 amp breaker with a 30 amp breaker.
We reject the plaintiffs' assertion that they have claims against Kenneth Warren in contract, for the simple reason that the advice complained of did not constitute a breach of Kenneth Warren's contracts with Fedders and Star. Warren's contract with Fedders and Star extended only to air conditioning repair. Warren's contracts with Star and Fedders did not extend to or embrace advice on residential electrical systems, or electrical circuit analysis. Any advice on electrical systems was wholly outside the air conditioner repair contracts. Warren's contracts with Star and Fedders imposed upon him a duty of prudent air conditioning repair, but did not impose upon him a duty of prudent electrical circuitry analysis.
We conclude that because Warren's alleged advice did not come within the scope of Warren's contracts, and did not constitute a breach of Warren's contractual *1280 duty of prudent air conditioner repair, plaintiffs do not have an action in contract for the breach of the stipulation pour autrui intended for their benefit. They are thus unable to avail themselves of the longer ten year prescriptive period applicable to actions in contract.
We do not mean to hold that an appliance repair contract may never be breached by negligent electrical systems repair or inspection. In our cause, plaintiffs never established that Kenneth Warren's contracts with Star and Fedders extended beyond air conditioner repair. No evidence was adduced that said contracts encompassed the repair and/or inspection of electrical systems. Our decision is thus based upon what was established at trial to be the scope of the contracts.
We find for the foregoing reasons that the trial court did not err in granting a directed verdict in favor of Fedders, Star Furniture, and their respective insurers, and in sustaining the peremptory exception of prescription in favor of Kenneth Warren. The trial court's judgment is at appellants' cost in all respects affirmed.
AFFIRMED.