474 So.2d 972 (1985)
John FULFORD
v.
Monroe GREEN, et al.
No. CA 84 0653.
Court of Appeal of Louisiana, First Circuit.
July 8, 1985.
*973 John Fulford, pro se.
J. Marvin Montgomery, Asst. Atty. Gen., Louisiana Dept. of Justice, Baton Rouge, for defendants-appellees Monroe Green, et al.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This action commenced as a suit by two prison inmates, John Fulford and John Merit, and the Angola Inmate Welfare Fund (Welfare Fund) seeking to (1) enjoin three prison employee organizations from having concession booths at the 1981 Angola Prison Rodeo and, thereafter, (2) require the three employee organizations to remit to the Welfare Fund all profits made from their concession booths at the Angola Prison Rodeos from 1975 to 1980 and (3) nullify any agreements with the three employee organizations for concession booths at the 1981 Angola Prison Rodeo and thereafter.[1] Made defendants were seven inmates who were members of the Inmate Rodeo Commission (Commission), fourteen prison employees who were members of the Employee Rodeo Committee (Committee), the Angola Employees Recreation Organization, the Employees Baseball Organization and the Angola Fire Department Organization. The Committee and the three employee organizations (who were represented by the Office of the Attorney General) filed a dilatory exception pleading the objection of lack of procedural capacity and a peremptory exception pleading the objection of no right of action contending the Welfare Fund was not a legal entity for purposes of suit and Fulford and Merit were not proper persons to act for it. A commissioner for the district court entered an order sustaining the dilatory exception and dismissed the Welfare Fund as a party plaintiff.[2] Answers were then filed and the case was fixed for trial. On the day of trial, counsel for the Committee and the three employee organizations filed a peremptory exception pleading the objection of no right of action and verbally urged the objection of no cause of action. A week after the trial was completed, a peremptory exception pleading no cause of action was filed in writing. The district court overruled the objection of no cause of action, sustained the objection of no right of action and dismissed Fulford's suit. This devolutive appeal followed.

FACTS
The Angola Prison Rodeo (Rodeo) started in 1965 as a recreational activity for the inmates of the Louisiana State Penitentiary (Angola). The Rodeo was organized as a joint and voluntary effort of Angola inmates and employees. The Rodeo is an annual event held every October on State land within the boundary of Angola. Initially, the Rodeo was not open to the public. However, after several years, the public was invited to attend and admission tickets were sold. After the public was invited to attend, employee and inmate organizations began selling concessions in tents. These concessions consisted of food, *974 beverages, souvenirs and handicrafts. Subsequently, permanent concession booths, an arena, bleachers, a ticket building and livestock pens were constructed from materials which were donated, purchased or available at Angola. The labor for this construction was performed on a volunteer basis by inmates and employees.
Initially, $4,000 was taken from the Welfare Fund to start the first construction. Subsequently, this money was returned to the Welfare Fund and money from the Angola General Fund and the Rodeo Fund were used for construction. The arena, concession stands and appurtenances are owned by the State of Louisiana.
The organizing bodies of the Rodeo are the Commission and the Committee. The Commission is composed of twelve volunteer inmates. The Commission selects two inmates who sit on the Committee. The warden of Angola established the Committee in 1969 to plan, organize and coordinate the Rodeo as an activity of Angola. The warden is the chairman of the Committee which is composed of volunteer employees and the two volunteer inmates. The Committee administers the Angola Rodeo Fund, determines who will have concession booths and transacts business necessary to operate the Rodeo. The Commission works with the Committee to plan, organize and coordinate the Rodeo. The gross proceeds of the Rodeo are placed in the Rodeo Fund. After expenses are paid, the Committee designates what amount shall remain in the Rodeo Fund as seed money for the next Rodeo. The balance of the Rodeo Fund is deposited in the Welfare Fund. The members of the Committee and the Commission receive no compensation (except that Commission members may receive cigarettes after Rodeo performances).
The Welfare Fund is made up of profits of the Rodeo, profits from the sale of the Angolite (prison newspaper), funds derived from the inmate plasma program, profits from the sale of visitor identification cards and forfeited contraband currency (La.R.S. 14:402[D]). The Welfare Fund is used to purchase recreational equipment and other items for use by the general inmate population. The Welfare Fund is administered pursuant to a specific Department of Corrections regulation. The Welfare Fund and the Rodeo Fund are State funds and are audited by the State.
The Committee determines who uses concession booths. The Committee considers ability to finance and what is to be sold in determining what organizations use concession booths. An initial fee of $250 is levied for a concession booth. This sum apparently represents the cost of constructing the booth. (Although the record is not clear, apparently some organizations were allowed to pay this fee at the rate of $70 per annum.) Once an organization obtains a booth, it may continue to use it in perpetuity unless it ceases to exist as an organization or violates law or prison security regulations. During the 1980 Rodeo, eight inmate organizations and three employee organizations had concession booths. The three employee organizations were the Employees Recreation Organization, the Angola Volunteer Fire Department Organization and the Angola Employees Baseball Organization.[3] The employee organizations sold hot dogs, hamburgers, corn dogs, cokes and cotton candy. Inmate organizations sold souvenir T-shirts, caps, pizzas, peanuts, popcorn, leathercraft, sno-cones, coffee, chocolate and balloons. All organizations with concession booths provide their own funding. The profits from each concession booth belong to the organization sponsoring the concession.

NO RIGHT OF ACTION

(Assignment of Error No. 3)
The appellant contends the district court committed error when it dismissed his suit by sustaining a peremptory exception pleading the objection of no right of action. *975 Appellant asserts he has a right of action because (1) he is the elected president and a member of the Welfare Fund, (2) he is class member and representative of all Angola inmates who are the beneficiaries of the Welfare Fund and own the fund and (3) he, as a private citizen and inmate, can enforce the provisions of La.R.S. 15:862 which proscribes certain activities by Angola employees and voids contracts related thereto.
The objection of no right of action asserted in a peremptory exception raises the question of whether a remedy afforded by law can be invoked by the plaintiff and determines if the plaintiff has a right or legal interest in the subject matter of the suit. Favrot v. Favrot, 448 So.2d 187 (La. App. 1st Cir.1984); Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir.1979). Further, a party seeking an injunction (as appellant herein) must have standing to sue and the action must present a justiciable controversy. La.C.C.P. art. 681; Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981). Because the appellant seeks judgments that would affect public funds and public property, he must show an interest in the litigation peculiar to him personally which is separate and distinct from that of the general public. Schaefer v. Treen, 444 So.2d 188 (La.App. 1st Cir. 1983), writ denied, 446 So.2d 315 (La.1984).
The appellant's contention that he has a right of action because he is a member, owner and president of the Welfare Fund is without merit as a matter of fact and law. The Welfare Fund is a bank account for State money used for the benefit of Angola inmates pursuant to regulations of the Department of Corrections. The Welfare Fund is not a proper party plaintiff (La.C.C.P. art. 682 et seq.) or a proper party defendant (La.C.C.P. art. 731 et seq.) and, as such, has no legal capacity to sue or be sued.
We must look to the nature of the claims asserted to determine if the appellant (as an inmate or citizen) has a right of action for the relief sought. Appellant's basic claim is that the agreements[4] by the Committee (representing the State) with the three employee organizations (whether they are unincorporated associations or nonprofit corporations) for use of the concession booths (owned by the State) are in violation of La.R.S. 15:862, which provides as follows:
No official or employee of the Louisiana State Penitentiary shall be personally interested, directly or indirectly, in any contract, purchase, lease, or sale of lands, materials or supplies, or in any contract for work to be done.
Whoever violates this Section shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
All contracts or agreements of this nature shall be null and void and of no binding effect against the state. [Emphasis added].
The parties to the contested agreements are the State (through the Committee) and the three employee organizations. The appellant does not represent the State. He is not a member of and does not represent any of the employee organizations. The appellant is not a member of and does not represent the inmate organizations that have concession booths. The evidence fails to show appellant is a member of or represents an inmate organization that has been denied a concession booth or has had a concession booth taken from it. The appellant is not a member of the Committee or the Commission and does not participate in the Rodeo (except occasionally as a spectator). There is no evidence showing appellant is a taxpayer, and he cannot be a voter. La. Const. of 1974, art. I, § 10; La.R.S. 18:102(1).
The appellant has no legal interest in or any control over the Welfare Fund. The Welfare Fund is owned by the State of Louisiana and is administered by the Department of Corrections pursuant to departmental regulations. Appellant's status *976 as an inmate and potential beneficiary of the Welfare Fund does not create a personal interest in the Rodeo Fund (or the Rodeo) which is peculiar to him. The only relationship between the Welfare Fund and the Rodeo is that the Welfare Fund receives the profits (less seed money) of the Rodeo. However, the profits of the concession booths are not a part of the profits of the Rodeo because concession booth profits go to the organization (inmate or employee) which sponsors the concession. Therefore, terminating the agreements for the employee concession booths will not transfer concession profits into the Rodeo Fund (and increase the amount donated to the Welfare Fund) because whatever organization gets a concession booth will keep the concession profits.[5]
In the factual posture of this case, appellant has failed to demonstrate an interest peculiar to him personally which is separate and distinct from the general public which would give him a right of action. This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the district court sustaining the peremptory exception pleading the objection of no right of action and dismissing appellant's suit is affirmed.[6] Appellant is cast for all costs. La.C.C.P. art. 5188; Hose v. Hose, 446 So.2d 909 (La.App. 1st Cir.1984) and the cases cited therein.
AFFIRMED.
NOTES
[1] The plaintiffs also sought an injunction against the warden and all prison employees to keep them from taking retaliatory action against the plaintiffs.
[2] This same order dismissed Merit as a party plaintiff for failure to pay court costs.
[3] The testimony of Warden Ross Maggio, Jr. indicated each of these employee organizations is incorporated as a nonprofit corporation.
[4] We do not attempt to determine what legal category these agreements fall into.
[5] The organizations that sponsor concessions use their own funds and resources to acquire and/or produce the items sold at the Rodeo. The appellant is not a party to the individual contracts of sale between the organizations and the persons who acquire the products or goods sold. The funds used to acquire and/or produce the products sold and the proceeds of the sales are not public funds, but are owned by the organizations. Appellant has cited no authority by which a court can forfeit such funds (or the products sold) to the benefit of the Welfare Fund.
[6] Because of our ruling on Assignment of Error No. 3, it is unnecessary to rule on appellant's other assignments of error. In Assignment of Error No. 1, appellant contends the Commissioner committed error by ordering the dilatory exception sustained and dismissing the Welfare Fund as a party plaintiff. As indicated hereinabove, the Welfare Fund is not a legal person and cannot be a party plaintiff (or defendant). In Assignment of Error No. 2, the appellant contends the peremptory exception pleading the objection of no cause of action was not timely filed by the defendants. Because the district court overruled this exception and the defendants did not answer this appeal to complain of the ruling and because of our ruling herein, this complaint is now moot.