479 So.2d 537 (1985)
Yvonne J. COLLINS
v.
Carolyn C. CHRISTOPHE, et al.
No. CA 84 0936.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Rehearing Denied December 26, 1985.
*538 James A. Carnes, Baton Rouge, for plaintiff-appellant Yvonne J. Collins.
Donald R. Smith, Baton Rouge, for defendants-appellees Carolyn C. Christophe, et al.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This is a suit for damages in tort alleging a fall during a party at a private residence. The homeowner's insurer[1] defended on the grounds that the premises were not defective, the homeowner was not negligent and, in the alternative, that the plaintiff was either contributorily negligent or assumed the risk. A trial by jury ended with a general verdict in favor of the insurer. The plaintiff filed an application for a new trial which was denied. The plaintiff then qualified as a pauper and took this devolutive appeal.

*539 FACTS
Effective April 3, 1981, Carolyn C. Christophe purchased a homeowners policy of insurance from Prudential Property and Casualty Insurance Company (Prudential). This policy had a term of one year and insured the premises located at 5668 Jackson in Baton Rouge, Louisiana. The policy had liability insurance limits of $25,000.
Commencing at approximately noon on Friday, November 13, 1981, Christophe and her sister, Myrtis E. Coleman, sponsored a "supper" at Christophe's home at which food and drinks were sold to raise funds to help defray the legal expenses of one of Christophe's nephews. The "supper" apparently was to last until November 15, 1981.
At approximately midnight or 1:00 a.m. on Sunday, November 15, 1981, Yvonne Jenkins Collins and a girlfriend went to Parker's Lounge. Collins had two scotch drinks and left the lounge between 2:00 or 2:30 a.m. Collins had her sister drop her off at the "supper" at Christophe's home at about 3:00 a.m. Collins got a drink and watched a card game for a while. Approximately thirty minutes later, Collins was standing at the portable bar at Christophe's home, turned to go towards the rented jukebox on the premises and fell. Collins was helped up, carried to a car and taken to Baton Rouge General Hospital.
Collins was treated in the emergency room of the hospital. X-rays were taken which revealed a fracture of the right ankle with an associated fracture of the anterior lip of the distal tibia. The fracture was reduced and the leg set in a plaster cast. Collins was then released to go home.
Two weeks later during a follow-up visit, it was discovered that the fracture was not healing properly. Collins was readmitted to the hospital on December 2, 1981, for surgery (open reduction and internal fixation) during which three small screws were placed in the bone to stabilize the fractures. Collins was discharged from the hospital on December 7, 1981.
On January 5, 1982, Collins was allowed to start walking and putting weight on her ankle. On January 26, 1982, her leg cast was removed and she was allowed to proceed to full weight bearing. Her treating physician testified she had regained "five degrees of dorsiflexion of her ankle, which is bending the ankle up and sixty degrees bending it down, which is very close to what is normal." Collins will require minor surgery on an outpatient basis to remove the screws in her ankle.

ERRONEOUS JURY INSTRUCTIONS AND INTERROGATORIES

(Assignments of Error 2 and 3)
Collins contends the trial court's "instructions to the jury were incomplete, unclear and confusing" and the "trial court erred in denying appellant's requested special charges and interrogatories to the jury and in charging the jury as to the effect of a previous injury or tort claim." Specifically, Collins complains about the jury instruction on the demeanor of a witness and the failure to give instructions on the strict liability of La.C.C. art. 2317 and the principle of respondeat superior in La.C.C. art. 2320.
The record reflects that, after the last witness testified (Christophe), the trial court recessed for fifteen minutes and a charge conference was held off the record during this period. The trial court then delivered its charge to the jury. After the jury retired, the trial court went on the record (out of the presence of the jury) and ordered that the jury instructions requested by Collins be filed of record and indicated that the "Court does not believe that Article 2317 of the Civil Code is applicable nor the 2320." A review of the jury charges shows the jury was not advised of strict liability or respondeat superior. The following then occurred:
THE COURT: At this time, we will invite the plaintiff to make what objections they have to the charge. Then, I will go to the defense attorney. All right. Mr. Simmons?

*540 MR. SIMMONS: To the extent that out [sic] proposed instructions were not given, we would object, Your Honor.
THE COURT: All right.
MR. SIMMONS: Whatever else might be prejudicial to the plaintiff.
Collins did not specifically object to the trial court's charge on the demeanor of witnesses. Her requested jury instructions do not contain a charge on this subject matter. Accordingly, this objection has been waived. La.C.C.P. art. 1793. A blanket objection to jury charges is not sufficient to preserve the objection. Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La.App. 1st Cir.1975), writ denied, 325 So.2d 279 (La. 1976).
The trial court was correct in refusing to give a charge on the strict liability of La. C.C. art. 2317. As indicated in the discussion in assignment of error 1 hereafter, strict liability is not applicable to the facts of this case.
The trial court committed error by not giving the requested charge on the principle of respondeat superior in La.C.C. art. 2320. In the trial court, Collins' theory of recovery was that Linda Jenkins was employed by Christophe as a bartender for the supper, Jenkins was responsible for "policing the area immediately adjacent to the bar", Jenkins negligently performed this duty and allowed water and/or a lemon slice to accumulate on the carpet and failed to warn patrons, such as Collins, of the wet and slippery condition of the carpet, and this condition caused Collins to fall. The evidence shows Christophe gave the supper as a profit-making venture to pay legal fees for her nephew. She paid Linda Jenkins $75 for her services in this endeavor. From this evidence, a jury could reasonably infer that an employer-employee relationship existed. Respondeat superior is obviously a key element of this claim. Failure to give the requested instruction was prejudicial error.
Because Louisiana appellate courts have jurisdiction over the facts in civil cases, such a prejudicial error does not necessarily require a remand. La.Const. of 1974, art. V, § 10; La.C.C.P. art. 2164. Where prejudicial error (such as that in the instant case) impeaches the validity of a jury verdict and the trial court record is complete, an appellate court should, if it can, render a judgment on the record before it. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). In making such a judgment, an appellate court is not bound by the manifest error (clearly wrong) rule for appellate review of trial court facts, but is required to make an independent evaluation of the record and determine a preponderance of the evidence. Suhor v. Gusse, 388 So.2d 755 (La. 1980); Rayford v. Saia Motor Freight Lines, Inc., 442 So.2d 548 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1242 (La.1984); Bossier v. Desoto General Hospital, 442 So.2d 485 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1122 (La.1984). Cf. Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280 (La. 1985) and the cases cited therein. However, where the weight of the evidence is nearly equal and a firsthand view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
However, although a portion of these assignments of error has merit, as indicated in the discussion in assignment of error 1 hereafter, we believe we can determine a preponderance of the evidence on the face of the record before us.

JURY VERDICT CONTRARY TO LAW AND EVIDENCE

(Assignment of Error 1)
Collins contends that the jury verdict "was not based upon essential and correct legal principles and is contrary to the law and evidence and is, therefore, clearly wrong and manifestly erroneous."
Collins testified that prior to her fall she had walked up to the bar from two different directions and did not see any foreign objects on the floor or any defects (such as *541 tears) in the carpet. Collins testified she "knew it had to be ice that I slipped on" because her pants' leg and her hand were wet after she fell. She admitted she did not see or feel any ice. The hospital records for November 15, 1981, show that Collins gave a history of "twisted right ankle at party". The history does not mention ice, water or a foreign object. In a pretrial deposition, Collins denied any prior injuries to her right ankle. However, at the trial, she admitted she went to the hospital for treatment of her right ankle after she fell and hurt it at church on February 10, 1981, and returned for treatment on March 31, 1981. The hospital records also show Collins went for treatment on January 17, 1980, complaining of pain in her right arm, leg and chest after an automobile accident.
Linda Jenkins, Collins' sister, testified Christophe asked her to help with the supper. Linda stated that her duties were cooking, mixing drinks and cleaning the house. After the supper was over, Linda received $75 for her work. Linda was acting as bartender when Collins arrived at Christophe's house. Earlier in the evening, one of the people at the supper told Linda he had spilled a drink in the area where Collins fell. However, on cross-examination, Linda admitted she heard the man say "I waste a drink" and he was standing in the area where Collins fell. She did not see him drop the drink and "took for granted that's where he waste a drink at." Linda saw Collins when Collins came in. Collins came to the bar, but Linda was making a drink for someone else. Later, Linda saw Collins fall. Linda went to the area where Collins fell and observed a slice of lemon on the shag carpet. Linda also sopped up some water from the carpet with a towel. Linda did not observe any tears in the carpet and did not see Collins step on anything. Collins was drinking a scotch and water.
Nell Jenkins, another one of Collins' sisters, testified she met Collins at Parker's Lounge and stayed there until closing time. She and Collins were drinking scotch and water. Each had two or three drinks.
They then went to the supper. Nell was standing next to Collins when she fell. Nell was talking to Linda at the time. Collins started walking toward the jukebox and she fell down. Nell did not see anything on the carpet and did not notice anything unusual about the carpet. Hillery Hayward and Ronny Baxter got Collins up. Nell went with Collins to the hospital. At the hospital, she noticed Collins' right pants' leg was wet. Nell did not notice water on the carpet.
Anthony A. Palumbo testified he was an insurance adjuster with Baton Rouge Claim Service. He investigated the claim for Prudential. In March of 1982, he went to Christophe's home and examined the carpet and took pictures. The carpet was a one-fourth inch low shag that had no rips, tears or defects in it.
Christophe testified that on the night of November 14-15, 1981, she worked at Copolymer from 10:00 p.m. to 6:00 a.m. and, thus, was not present when Collins fell. Her carpet was six months old at the time of the supper. Christophe gave Linda $75 for the work she did at the supper.
The duty of the owner or custodian of immovable property for a defect in his premises is set forth in Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.1983), writ denied, 435 So.2d 429 (La.1983) as follows:
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonable safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence.... This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315.... The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La.C.C. art. *542 2317, a claimant is relieved of proving the defendant's scienter.... Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing.... Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty. [Citations omitted].
There is a distinction between a defect in the premises and a dangerous condition on the premises. Thus, a foreign object (such as a stone,' lump of clay or slice of lemon) on the premises does not constitute a defect in the premises, although it may constitute an unreasonably dangerous condition on the premises. Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3rd Cir.1981). The duty of the owner or custodian of immovable property for conditions creating unreasonable risks of harm on the premises is set forth in Lear v. United States Fire Insurance Company, 392 So.2d 786, 789 (La.App. 3rd Cir.1980) as follows:
This Court, in Levert v. Travelers Indemnity Company, 140 So.2d 811 (La. App. 3 Cir.1962), stated the duty of a homeowner to an invitee, which we analogize to the plaintiff in this case, on page 813:
"The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of reasonable prior discovery of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger.
"On the other hand, the occupier does not insure an invitee against the possibility of accident. The invitee assumes all normally observable or ordinary risks attendant upon the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable or which should have been observed by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it."
See also Sumner v. Foremost Insurance Company, 417 So.2d 1327 (La.App. 3rd Cir. 1982). Thus, negligent and strict liability are applicable when there is a defect in the thing (premises), but only negligent liability is applicable when there is a dangerous condition on the premises.
A preponderance of the evidence clearly shows the carpet itself was not defective. Thus, strict liability is not applicable. The evidence also clearly shows Christophe had no knowledge (direct or implied) of the condition on the carpet because she was not present. The only way Collins can prevail is to impute negligent liability to Christophe through Linda Jenkins.
Even assuming that Linda Jenkins was an employee of Christophe, a preponderance of the evidence fails to show that she reasonably knew or should have known that the carpet was slippery because of water and/or a lemon slice on it. Linda had no knowledge of the lemon slice until after Collins fell. She was only aware of one person who said he "waste" a drink and she did not see where he "waste" it (nor do we really know what "waste" means). The fact that one drink may have been dropped on a one-fourth inch shag rug does not create a reasonable inference that a dangerous condition was created. There *543 was no evidence to show that any of the other persons at the supper complained of the condition of the carpet. Further, it is improbable that one drink contained enough fluid to saturate a one-fourth inch shag carpet to the extent that it had to be sopped up with a towel and wet Collins' pants. In addition, a "waste" drink and a slice of lemon do not create an unreasonable risk of harm at a fund-raising house party because they are ordinary risks attendant upon the use of the premises in such circumstances. Cf. Calhoun v. Royal Globe Insurance Co., 398 So.2d 1166 (La. App. 2nd Cir.1981).
A preponderance of the evidence fails to demonstrate that either Christophe or Linda Jenkins were negligent. The verdict[2] is not contrary to the law and the evidence.
This assignment of error is without merit.

PREJUDICIAL REMARKS BY TRIAL JUDGE

(Assignment of Error 4)
Plaintiff further contends that the trial judge erred in making remarks to and in the presence of the jury which were prejudicial to the plaintiff's case. Collins, in her brief, gives two examples of such error. Collins cites the judge's comments to the jury prior to and at the commencement of the trial. Plaintiff complains that the court stated "... the fact that a law [suit has been filed] doesn't mean anything..." and "[j]ust because a person files a lawsuit, that doesn't mean anything, it only costs about $85.00 to file a lawsuit." In context, these statements appear as follows:
All right. And you understand, do you not, the fact that a lawsuit is filed doesn't mean anything, a person has to prove their case. And I will give you the law on what constitutes proof.
....
Like I mentioned, just because a person files a lawsuit, that doesn't mean anything. It only costs about eighty-five dollars to file a lawsuit. So you have to prove your case, ...
Plaintiff did not object to these comments at the time they were made. Failure to object to an error in a trial court at the time it is made constitutes a waiver of the right to complain of the error on appeal. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976); Oh v. Allstate Insurance Company, 428 So.2d 1078 (La.App. 1st Cir.1983); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981), writs denied, 407 So.2d 749 (La. 1981) and 409 So.2d 659 (La.1982). Furthermore, in the instant case, the comments taken in context are not unfair or prejudicial.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is cast for all costs. La.C.C.P. art. 5188; Fulford v. Green, 474 So.2d 972 (La.App. 1st Cir.1985).
AFFIRMED.
NOTES
[1] The homeowner was never served and the case went to trial only against the insurer.
[2] When a general jury verdict is used, it is presumed the jury resolved all factual disputes in favor of the prevailing party. Stuckey v. Nissan Motor Corporation in U.S.A., 440 So.2d 799 (La.App. 1st Cir.1983), writs denied, 444 So.2d 1224, 1225 (La.1984).