529 So.2d 449 (1988)
Stephen PRITCHARD and Shasta Pritchard, Individually and on Behalf of Their Minor Son, Peter Eric Pritchard
v.
SAFECO INSURANCE COMPANY, Thomas Hinton, Sr. & Marilyn Hinton.
No. CA 87 0824.
Court of Appeal of Louisiana, First Circuit.
June 21, 1988.
Writ Denied October 21, 1988.
*450 Kevin Patrick Monahan, Baton Rouge, for plaintiff-appellant Stephen Pritchard, etc.
Arthur H. Andrews, Baton Rouge, for defendant-appellee Safeco Ins. Co.
Robert L. Kleinpeter, Baton Rouge, for defendant-appellee Thomas Hinton and Marilyn Hinton.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
This is an action ex delicto by Mr. and Mrs. Stephen Pritchard, individually and on behalf of their minor son, Peter Eric Pritchard, against Mr. and Mrs. Thomas Hinton and Safeco Insurance Co. (Safeco), for injuries received by Eric Pritchard when a homemade firecracker or bomb exploded on the premises under the care of the Hintons. From a directed verdict in favor of Safeco and from a jury verdict in favor of the defendants, plaintiffs appeal.

FACTS
The incident causing Eric's injuries occurred on Friday, March 23, 1984. However, as the record indicates, the March 23 incident was actually the culmination of two other attempts in the preceding six days to explode a homemade firecracker or bomb.
At the time of the accident, Eric was fourteen years old. The defendants' son, Tommy Dale Hinton, was twelve. Eric and Tommy, along with Michael Landess, also about twelve, all lived in the same Baton Rouge neighborhood and were long-time playmates.
On the Sunday before the Friday night accident, Eric had filled a plastic container resembling a toy hand grenade with black gunpowder he took from a musket his father kept in a gun cabinet. Michael and Eric then proceeded to Tommy's house to obtain a fuse. When they arrived there, Eric told Tommy he needed a fuse for a little bomb he had. After Tommy took a fuse from a firecracker in his room and was about to leave the house, his mother, Marilyn Hinton asked why he needed a fuse, but he didn't answer her. The three then attempted to explode the device in Tommy's yard, whereupon it only smoked. By the time Mrs. Hinton looked through the kitchen window, all she saw was a puff of smoke. She instructed Tommy not to explode any more such devices in their yard. The Hintons had a policy of prohibiting *451 fireworks in the yard for fear the leaves or the house would catch on fire.
Several days later, Eric had made a second explosive, this time out of bamboo, using more of the black gunpowder from his father's gun. Testimony is contradictory as to whether Eric obtained another fuse from Tommy. The second explosive was detonated away from the Hintons' property.
The third explosive was made from an empty CO2 cartridge Eric had left over from a CO2 pistol. After filling it with the gunpowder he had taken from his father's gun, he and Michael tried to explode it with a newspaper fuse. The fuse failed and they proceeded to Tommy's house. They deliberately left the device at the edge of the street to prevent Mrs. Hinton from seeing it, according to Michael's testimony. It was about 7:45 p.m. and Tommy, his mother, and his 18-year-old sister were just finishing supper. The two told Tommy they had made another bomb and needed a fuse for it. When Mrs. Hinton, who was in the next room, asked the boys what they had, they replied it was only a small firecracker.
Meanwhile, Tommy, who had gone to his room to search for a fuse, returned and the three ventured outside. Tommy had been unable to find a fuse, and after the boys unsuccessfully tried to light the explosive using a match as a fuse, they proceeded to a garage belonging to Tommy's grandmother. Tommy thought there might be yarn there. His grandmother was residing in a nursing home and his parents were left with custody of her home and garage.
Only Tommy and Michael were allowed in the garage and only for the express purpose of getting lawn mowers to cut grass in the neighborhood. The garage has three doors on it; the two side doors have locks and the twenty-foot front door is secured by two small latches holding a one-fourth inch piece of metal on each side. Tommy was able to open the front door by jiggling the lock. After he found some yarn and was about to leave, Eric, who had followed him, told him to wait because he had spotted an electric grinder sitting on the workbench. He reportedly announced the grinder was just what he needed to make the hole in the explosive bigger. Tommy and Michael both testified they warned Eric the device would explode. Michael said he told Eric to remove the gunpowder first, whereupon Eric allegedly replied he didn't have time. Eric denied that either boy warned him not to use the grinder. He said he touched the device to the grinding stone for a few seconds and removed it. When he placed it back onto the grinder, the cartridge exploded. As a result of the explosion, Eric suffered an almost total amputation of his right index finger and part of his right, long finger and also a partial amputation of his left thumb. Five surgeries were necessary to repair the damage to his hands.

TRIAL COURT
Eric's parents, Mr. and Mrs. Stephen Pritchard, sued Tommy's parents and Safeco, the homeowner insurer of the grandmother's house. The suit alleged Mrs. Thomas Hinton was negligent in allowing the boys to engage in such dangerous activities. The suit further contends the Hintons and consequently Safeco are strictly liable because the grinder was a defect on the premises insofar as it posed an unreasonable risk of harm.
The trial court judge granted a directed verdict in favor of Safeco because he did not find a plugged-in grinder in a garage to be either a defect "in" the premises or "on" the premises, as defined by Collins v. Christophe, 479 So.2d 537 (La.App. 1st Cir. 1985), writ denied, 483 So.2d 1021 (La. 1986).
In oral reasons, the judge stated the record was void of evidence involving prior attempts by children to use the grinder.
The trial court also submitted its own special jury interrogatory, deleting any reference of negligence on the part of Mr. or Mrs. Hinton. Instead, it asked the jury to consider only the negligence of Tommy Hinton, followed next by the question of Michael Landess' and Eric Pritchard's negligence.
*452 The judge reasoned that the Hintons themselves could not be directly negligent because they took no active part in the bomb making. The judge dismissed the theory that the accident happened as a result of Mrs. Hinton's failure to supervise her son because the court concluded such a theory applied only to younger children. Inasmuch as Tommy Hinton was of the age of discernment, he could be legally negligent, and, therefore, his parents could be vicariously liable for the acts of their minor son. Accordingly, the question of Tommy's fault was submitted to the jury, and was subsequently rejected.
At that point, the jury was instructed to go no further with the interrogatories.

ASSIGNMENTS OF ERROR
Plaintiffs contend the trial court erred:
1. In granting defendant, Safeco Insurance Company, a motion for a directed verdict on the issue of strict liability and negligence;
2. In refusing to apply strict liability under La.Civ.Code art. 2317 and negligence under La.Civ.Code art. 2315, to the defendants, Thomas and Marilyn Hinton;
3. In refusing to give an instruction of the extra degree of duty bestowed upon custodians of premises engaged in ultra hazardous activity; and
4. In submitting jury interrogatories only as to the negligence of Thomas Hinton, Michael Landess, and Peter Eric Pritchard.
Plaintiffs also allege the jury's verdict is contrary to the evidence and law.

Assignment of Error No. 1
A property owner or one having custody of property is obligated to keep such property in a reasonably safe condition. Under either strict liability per La. Civ.Code art. 2317 or negligent liability per La.Civ.Code art. 2315, the duty is the same. The distinction is that under negligent liability, the plaintiff must prove the owner or custodian knew or should have known of the defect, whereas under strict liability, the plaintiff is relieved of that burden. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497 (La.1982); Collins v. Christophe, 479 So.2d 537, 541 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La. 1986), citing Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983).
Under either theory, however, there must be a defect. To constitute a defect, the plaintiff must prove the condition posed an unreasonable risk of injury. The reasonableness of the risk is assessed by weighing the likelihood and magnitude of the harm occurring against the cost and burden of eliminating the risk, along with the utility of allowing the condition to exist. Furthermore, the plaintiff must show that the risk which caused the injury was within the ambit of the duty placed on the owner or custodian. Collins, at 542.
Strict liability applies when the defect is found to exist "in" the premises, whereas negligent liability applies when the defect is "on" the premises. Collins, at 542.
In the case sub judice, the trial court ruled that the grinder was not a defect because it did not pose an unreasonable risk of injury. We agree.
Counsel for plaintiffs argues that bomb making is an ultra hazardous activity and thus strict liability should apply. Additionally, counsel argues that the Hintons, as custodians of the property, had a duty to warn of the dangers involved in such activity.
Inasmuch as we agree with the trial court that the bomb-making activity took place off defendants' premises and defendants were not actively involved in the activity nor were they aware that plaintiff intended to use the grinder, plaintiffs' argument is dismissed.
Before granting a motion for a directed verdict in a jury trial, the trial judge must first ascertain that the evidence, when considered in the light most favorable to the movant's opponent, redounds so overwhelmingly in favor of granting a directed verdict, that reasonable jurors could *453 not arrive at a contrary conclusion. Moore v. Aetna Casualty and Surety Company, 454 So.2d 1273, 1277 (La.App. 2d Cir.1984).
Applying the above precept to the case at bar, we hold the directed verdict was appropriate.

Assignment of Error No. 2
While it is true, as plaintiffs' argue, that bomb making is an ultra hazardous activity, such a tenet is irrelevant in deciding whether Thomas and Marilyn Hinton were strictly or negligently liable as the evidence does not support a finding that they were themselves involved in the bomb making activity. Nor does the evidence show that Mrs. Hinton was aware of the size of the explosive Eric had concocted.
Additionally, plaintiffs argue Mrs. Hinton, by allowing her son to handle fireworks, was held to an extraordinary degree of care that required her to warn any individuals entering her premises to cease and desist such activity.
While parents are responsible for the supervision of their own children, this court knows of no law that holds them responsible for their neighbors' children.
Moreover, the record shows that Mrs. Hinton instructed Tommy not to explode any more fireworks in the yard, and, as stated already, was unaware of the exact nature of their activities. Parents cannot be expected or required to exercise constant supervision over boys at that age.
The question as to whether Tommy Hinton, their son, was engaged in such activity and whether his actions were the cause of Eric's injuries was considered by the jury and is discussed below.
Plaintiffs also argue that Marilyn and Thomas Hinton violated La.R.S. 14:54.3[1] and La.R.S. 40:1471.3.[2] We disagree inasmuch as the trial court was correct in determining the Hintons, with the possible exception of their son, Tommy, were not directly involved in the unauthorized activity.

Assignment of Error No. 3
Plaintiffs argue that the trial court should have instructed the jury as to the extraordinary degree of care imposed on those who deal with dangerous substances such as fireworks. That is a correct statement of the law. Mobley v. Rego Company, 412 So.2d 1143, 1152 (La.App. 2nd Cir.), writ denied, 414 So.2d 774 and 414 So.2d 1251 (La.1982). However, an incorrect instruction on the law does not warrant remand when the appellate court has all the facts before it; the appellate court decides the case on the merits. Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280, 1284 (La.1985), citing Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975).
In the case before us, the record shows that Eric was the one primarily responsible for the "bomb-making" activities. The gunpowder and containers were procured by him. Tommy merely provided the fuses. The facts simply do not indicate *454 that Eric's injuries were caused by any substandard behavior on Tommy's part. However, the record does contain enough evidence to conclude that Eric, who was fourteen at the time, should have known of the risk of a spark from the grinder igniting the gunpowder. Moreover, Tommy and Michael both testified they warned Eric not to use the grinder on the cartridge with the gunpowder still in it.
Accordingly, we find the record supports the jury's finding that Eric's injuries were not caused by any negligence of Tommy even when measured by the extraordinary degree of care standard.

Assignment of Error No. 4
Plaintiffs next object to the trial court's refusal to allow the jury to consider the negligence of Thomas and Marilyn Hinton.
Inasmuch as there was no evidence that indicated Thomas and Marilyn Hinton were engaged in the bomb making themselves, there was no need for the jury to consider their negligence. Savoie v. McCall's Boat Rentals, Inc., 491 So.2d 94, 105 (La.App. 3d Cir.), writ denied, 494 So.2d 334 and 494 So.2d 542 (La.1986). However, as the trial court explained, they could be held vicariously liable for any negligent acts of their son, Tommy, if such negligence was the cause of Eric's injuries. Consequently, the judge properly placed that issue before the jury.
While it is true Tommy and Michael were not named as parties, La.Code Civ.P. art. 1812 allows the court to submit a special interrogatory as to whether another person, party or not, was at fault and whether such fault was the cause of the damages.
Inasmuch as this court has dismissed plaintiffs' assigned errors, we hold the jury's verdict was not contrary to the law and evidence.
Accordingly, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] La.R.S. 14:54.3 provides in part:

It shall be unlawful for any person without proper license as required by R.S. 40:1471.1 et seq. knowingly and intentionally to manufacture, possess or have under his control any bomb.
A bomb, for the purposes of this Section, is defined as an explosive compound or mixture with a detonator or initiator or both, but does not include small arms ammunition.
As used herein the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuses (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.
This section shall not apply to fireworks possessed within the meaning and contemplation of R.S. 51:650 et seq.
[2] La.R.S. 40:1471.3 provides in part:

A. It shall be unlawful for any person to engage in the business of a manufacturer-distributor of or a dealer in explosives, or to transport explosives, or to acquire, sell, possess, store or engage in the use of explosives in this state, except in conformity with the provisions of this Part. Each manufacturer-distributor, dealer, user, or blaster, as such words are above defined, shall possess a valid and subsisting license or permit issued by the secretary of the Department of Public Safety.