**Dorothy Campbell ULMER et al.,
Appellants,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Appellees.**

**AETNA CASUALTY AND SURETY COMPANY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 23476.**

United States Court of Appeals
Fifth Circuit.

July 14, 1967.

Rehearing Denied Sept. 12, 1967.

Arthur Cobb, Baton Rouge, La., A. Morgan Brian, Jr., New Orleans, La., Deutsch, Kerrigan & Stiles, New Orleans, La., for appellee-appellant Aetna Casualty & Surety Co.

Lloyd Cyril Melancon, New Orleans, La., for appellee Hartford Accident & Indemnity Co.; Porteous & Johnson, New Orleans, La., of counsel.

Barefoot Sanders, Asst. Atty. Gen., Louis C. La Cour, U. S. Atty., Gene S. Palmisano, Asst. U. S. Atty., Eugene N. Hamilton, Atty., Dept. of Justice, Washington, D. C., for appellee the United States.

A. R. Christovich, Jr., New Orleans, La., for appellee Geoffrey Stewart Read; Christovich & Kearney, New Orleans, La., of counsel.

Before JONES, GEWIN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge.

On September 27, 1958, a United States Navy helicopter crashed in Louisiana killing its three occupants: Lieutenant Ulmer, Lieutenant Commander Brou, and Petty Officer Patterson. Subsequently, the widows and minor children of Brou and Ulmer and the mother and father of Patterson brought suit for the deaths. Diversity jurisdiction is derived from Title 28, U.S.C., Sec. 1332.

The helicopter flight involved in this litigation originated from Alvin Callender Field Naval Air Station at Belle Chasse, Louisiana. All members of the crew, the decedents in this action, were members of the Navy Air Reserve and were participating in maneuvers constituting part of their military training. When death or injury results as an incident to military service, the serviceman has no cause of action against the United States. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

The defendants at this stage of the litigation are the insurers of various manufacturers and assemblers of the helicopter, pursuant to Louisiana's Direct Action Statute, LSA–R.S. 22:655. For convenience, the insurers and their insureds are listed as follows:

Vertol Aircraft Corporation—maker of the aircraft.

Hartford Accident and Indemnity Company—the general liability insurer of Vertol.

Geoffrey Stewart Read—the products liability insurer of Vertol.

Parsons Corporation—the fabricator and assembler of the helicopter blades involved.

Aetna Casualty and Surety Company— the insurer of Parsons.

A directed verdict was granted in favor of Hartford. Aetna's attempt to implead the United States was denied, and the jury returned a verdict in favor of both Read and Aetna on May 29, 1965.

The plaintiffs have taken this appeal, and from their multitude of specifications of error there evolve two primary contentions: (1) the plaintiffs were prejudiced by the wrongful refusal of Read to produce the parts of the blade spar of the helicopter that broke, causing the crash, and (2) the trial was conducted in a manner that was generally prejudicial to the case of the plaintiffs.

To place this protracted litigation in its proper perspective, it should be noted that this is its second appearance before this Court. The issues on the prior appeal, Read v. Ulmer, 308 F.2d 915 (5 Cir. 1962), were that Vertol had been a named defendant, but was asserting lack of jurisdiction over its person. The district court had granted dismissal as to Vertol, but had made such dismissal contingent on Vertol's disclosure of its insurer. This contingent dismissal was challenged as was the district court's granting of a default judgment against Read sua sponte, pursuant to Federal Rule of Civil

Procedure 37(b) (2) (iii).[1] The district court had been of the view that Read was deliberately withholding certain parts of the helicopter blade in defiance of an order to produce, but no hearing had ever been held to determine why Read had failed to produce the parts.

■ We held that it was improper for the district court to make dismissal of Vertol contingent on any kind of disclosure. If the district court has no jurisdiction over a defendant, the defendant is entitled to an unqualified dismissal.

As to the default judgment against Read, we reversed, noting that the penalties of Rule 37 are not to be invoked absent a showing that the defendant was in fact able to produce but did not do so. Societe Internationale Pour Participations, etc. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). This point was very much in issue since Read's contention at this time was that it could not produce the parts because they were in the possession of Vertol, and Vertol would not cooperate by turning them over to Read. The district court was held to be in error for regarding the duty of Read to produce as an absolute duty without inquiring whether Read had made a reasonable effort to comply with the order. The case was remanded for consideration of the reasonableness of Read's efforts.

The blade spar in question is a hollow piece of pipe that connects the hub or rotor of the helicopter to the outer ends of the blades of the helicopter. This blade spar separated in flight causing the crash of the helicopter. The expert and other testimony of all parties agreed that the breaking or separation of the blade spar was caused by metal fatigue resulting from internal corrosion. Many of the explanations for the corrosion given at the trial concluded that moisture would have had to have entered the blade spar in some manner to produce the corrosion. There was also testimony that moisture could have been sealed up in the spar tube at the time of manufacture.

The position of Parsons and Vertol, through their insurers Aetna and Read, is that Parsons manufactured the helicopter blades in question and Vertol installed them in the helicopter in 1952, and that this date was the last contact either had with them. From 1952 to 1958, the date of the accident, the blades were in the possession and control of the United States Navy. The Navy had subjected the blades to various overhauls and maintenance work and in so doing, the original "integrity" of the blades' construction was disturbed to such an extent that the defendants cannot be liable for a subsequent malfunction. Stated differently, the condition of the blades when they left the control of the defendants in 1952 is legally and factually remote from their condition at the time of the accident.

The insurers note that at least twice during the period from 1952 to 1958, the Navy subjected the blades to "zero time overhauls". This process involved loosening a cork sealer cap in the blade spar to clean the inside of the spar tube and application of a chemical to prevent rusting or scaling. It is the contention of the insurers that after these overhauls, the Navy negligently failed to replace the sealer cap in a secure manner so as to

1. "(b)  Failure to Comply with Order.
   *       *       *       *       *
   (2)  Other Consequences. If any party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, or to permit entry upon land or other property, or an order made under Rule 35 requiring him to submit to a physical or mental examination, the court may make such orders in regard to the refusal as are just, and among others the following:
   *       *       *       *       *
   (iii)  An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;".

prevent the entry of moisture. From this negligent conduct, it is argued that corrosion eventually resulted leading finally to complete separation.

Bearing out this contention is the testimony of the manager of Parsons who stated that if the cork sealer plug was securely inserted after being coated with varnish as it should have been, it would have been necessary to destroy the plug in order to remove it. His observation of the plug in question revealed that it had no adhesion to the blade spar and was easily removed.

■ We conclude that the jury was not only justified in reaching the conclusion that it was the Navy that was negligent, but that such a conclusion is compelled by the evidence.

A great deal of confusion resulted at the trial when counsel for the plaintiffs repeatedly attempted to comment before the jury that his clients' cause was prejudiced by Read's deliberate withholding from examination of certain portions of the blade spar. The reaction of the trial judge, to whom the case had been reassigned after this Court's remand, indicated that this was a new development to him, and he ordered counsel to appear before him out of the presence of the jury to facilitate more complete development of this issue. At this point in the trial Read disclosed that it had been notified by Vertol that the parts had been lost. The trial judge then observed that if this was the case, it would be impossible to attribute any willful withholding of the parts to Read. The next day was set aside to examine correspondence from Vertol to Read advising Read that the parts had been lost. The trial judge apparently examined such correspondence in his chambers outside the presence of counsel for either side. His ultimate conclusion was that Read's explanation was sufficient to justify its failure to produce the portions of the spar that had theretofore been in the possession of Vertol. The trial judge was likewise aware that at all times pertinent to this litigation, microscopic photographs of the parts were available to the plaintiffs for their examination and study. The same is true of reports prepared from actual examination of the parts. Appellants urge that production of the parts would have shown some condition not apparent from the photographs, but fail to suggest how.

The argument of plaintiffs has continually been that Read always had Vertol's cooperation, and that the only reason the parts were not produced was to impede the plaintiffs' preparation of their case. The plaintiffs find support for their argument from the fact that several members of the Vertol organization testified at the trial for the defendants even though they were more than a thousand miles outside subpoena range.

■ The plaintiffs have never explained why a hearing was never sought by them on the issue of the missing parts at one of the numerous pre-trial conferences. Instead, the case was allowed to go to trial with this critical issue unresolved. Nowhere in the record does there appear any evidence that would indicate that Read and Vertol were acting in concert other than the accusations of counsel for the plaintiffs. Indeed, the record reveals that the seven years elapsing between the time of the accident and the time of trial afforded the plaintiffs ample time to depose various personnel of Vertol in Pennsylvania, its principal place of business, or to bring suit directly against Vertol in Pennsylvania if it was believed that physical examination of the parts was necessary for preparation of their case. The conclusion is warranted, if not inescapable as urged by the defendants, that the plaintiffs actually did not want the parts; rather, it was to their tactical advantage to appeal to the sympathy of the jury by alleging wrongful conduct on the part of the insurance companies. This tactical maneuver has failed the plaintiffs, both before the jury and on this appeal. The jury obviously believed that the party responsible for the accident was the Navy (United States), which was immune from suit in this situation. Because of governmental immunity, plaintiffs sued the

only parties available, these defendants. Having done so, they completely failed to sustain their burden of showing causation between the defendants' insureds' manufacturing and inspection processes and the ultimate defect in the blade spar.

■ We conclude that the plaintiffs were given ample opportunities to expound upon their contentions concerning this issue during the trial of the case. Although the trial judge admonished counsel for the plaintiffs not to comment further on the issue of Read's bad faith, he nevertheless preserved the ultimate decision for the jury by the following charge:

"There is one other matter about which this Court must now instruct you. You have learned during the course of this trial that three component parts of the rotor blade spar tube that fractured were not produced at the trial of this case. You have heard testimony that those parts were last known to be in the control and custody of Vertol. If you conclude that Vertol has not satisfactorily explained the reason for the absence of those parts, you may infer that the missing parts would provide evidence unfavorable to Vertol, and this inference is to be weighed by you along with the other evidence in the case."

It is difficult to understand what more could have been done by the trial judge to assure fairness to all parties.

We have examined in detail plaintiffs' contentions of unfairness in the conduct of the trial, and conclude that the alleged instances of unfairness are either non-existent, non-prejudicial or are only appropriate admonitions from the trial judge for remarks and discussions instigated by counsel for the plaintiffs. These are the only other questions raised beside the previously disposed of claims having to do with the failure to produce the parts. Accordingly, the judgment is affirmed.

By virtue of our affirmance on the merits, we do not reach the question posed by Aetna of whether the language of Feres v. United States, supra, is broad enough to prohibit indemnification of a third party (Aetna) by the United States in an action involving the death of a serviceman incident to military service. But see, United Air Line, Inc. v. Wiener, 335 F.2d 379, 404 (9 Cir. 1964), cert. dismissed 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

Affirmed.