495 So.2d 976 (1986)
Sheila NORRIS, et al., Plaintiffs-Appellants,
v.
BELL HELICOPTER TEXTRON, et al., Defendants-Appellees.
No. 85-1087.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
Rehearing Denied October 30, 1986.
Writ Denied January 9, 1987.
Guglielmo, Lopez & Tuttle, James T. Guglielmo, Opelousas, Gary L. Lewis, Columbia, Mo., Morrow & Morrow, James S. Gates, Opelousas, for plaintiff-appellant.
Christovich & Kearney, A.R. Christovich, Jr., New Orleans, Darrel D. Ryland, Knoll, Roy & Spruill, J. Edward Knoll, Marksville, Mathews, Atkinson, Guglielmo, Marks & Day, Judith R. Atkinson, Baton Rouge, for defendant-appellee.
Before FORET, STOKER and KING, JJ.
*977 STOKER, Judge.
This appeal arises out of the consolidated cases of Betty L. Turner, et al v. Bell Helicopter Textron, Inc., et al and Sheila Norris, et al v. Bell Helicopter Textron, Inc., et al. These suits were consolidated in the trial court and remain consolidated on appeal. The facts of this case arose out of an unfortunate helicopter crash which occurred on September 3, 1980 near Cottonport, Louisiana, which caused the death of the two occupants, Richard Turner and Theodore Norris, Jr. At the time of the crash, Richard Turner was giving an instructional flight to Theodore Norris, Jr. The exact cause of the crash has never been determined by the National Transportation Safety Board (NTSB). The Turner and Norris families filed suit in Avoyelles Parish, Louisiana, and both named Bell Helicopter Textron, Inc. (Bell) as a defendant.[1] Bell was sued as manufacturer of the helicopter. A separate opinion will be rendered in the consolidated case of Turner v. Bell Helicopter Textron, Inc., et al, at 495 So.2d 986 (La.App. 3d Cir.1986).
In the bifurcated trial, the Turner suit was tried to the judge, while the Norris suit was tried to the jury. Different results were reached in each suit. The jury in Norris found no liability on the part of the defendants, and the judge found in favor of the Turners and against Bell. It is from the judgment awarding damages to Betty Turner in the amount of $463,353 and to Chris Turner, Terri Turner and Jane Turner, each, in the amount of $80,000 for the wrongful death of Richard E. Turner that Bell has appealed. The Norrises have appealed the rejection of their demands. Bell is the only original defendant in this appeal.
Ordinarily this court would be faced with the task of harmonizing the contrary liability findings of the trial judge and jury. Thornton v. Moran, 348 So.2d 79 (La.App. 1st Cir.1977), writ refused, 350 So.2d 897 (La.1977); writ refused, 350 So.2d 898 (La. 1977); writ denied, 350 So.2d 900 (La.1977); Bunkie Bank & Trust Co. v. Avoyelles Parish Pol. Jury, 347 So.2d 1305 (La.App. 3d Cir.1977) [Reporter is in error. This case was actually rendered by the Third Circuit Court of Appeal]; Deville v. The Town of Bunkie, 364 So.2d 1378 (La.App. 3d Cir.1978), writ denied, 366 So.2d 564 (La.1979); Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3d Cir.1983), writ denied, 443 So.2d 591 (La. 1983); writ denied, 443 So.2d 592 (La.1983), and Bishop v. Shelter Insurance Company, 461 So.2d 1170 (La.App. 3d Cir.1984), writ denied, 465 So.2d 737 (La.1985). The task of harmonization is more complicated in this instance because the jury's verdict was based on one answer to interrogatories. According to that answer the jury found that the Bell helicopter had been so altered after it left the hands of the manufacturer that it could no longer be considered a Bell product. As a result of the jury's answer to the interrogatory its verdict exonerated Bell from liability to the Norrises. This Court is of the opinion that the special interrogatory upon which the jury relied in rendering its verdict was not a correct legal conclusion upon which to base its decision.
We are of the opinion that while the modifications and repairs made to the aircraft were major ones and would be pertinent to the ultimate determination of a finding of a defect and causation, we do not find that, as a matter of law, an original manufacturer is exculpated from liability *978 once major alterations and repairs have been established. Alterations and repairs alone are not an absolute bar to a finding of liability. Rather, lapse of time, inadequate "accounting" for use between manufacture and accident, and alterations and repairs by persons other than the manufacturer will tend to negate the inference of a defect existing at the time of manufacture. See Scott v. White Trucks, 699 F.2d 714 (5th Cir.1983); Dutschke v. Piper Aircraft Corp., 564 F.Supp. 359 (M.D.La.1983), and Ulmer v. Hartford Accident and Indemnity Company, 380 F.2d 549 (5th Cir.1967).
Though we find that the conclusion upon which the jury found no liability on the part of Bell has no basis in our law and jurisprudence, we nonetheless hold that the jury reached the correct result.
Accordingly, we cannot simply harmonize the conflicting results reached by the judge and jury, but must instead find that the trial judge was manifestly erroneous, rather than find that the jury's verdict was more reasonable. Our findings, based on the "clearly wrong test," require that we affirm judgment in favor of Bell rejecting the demands of the Norrises and that we reverse the judgment in favor of the Turners.
The evidence presented establishes that the helicopter in question had been in use for some 17 years, had been flown for over 12,000 hours, had been used by several intervening owners before it was acquired by the Norrises, had been substantially altered, and was utilized by the Norrises in their crop dusting operations. Additionally, the helicopter log was missing the records of maintenance and repair to the aircraft from 1963 through 1976, so that care and maintenance during those intervening years could not be documented.
The trial court found that the evidence at trial preponderated that the helicopter was defective at the time of manufacture and delivery, that it was unreasonably dangerous in normal use, and that the death of Richard Turner and the Turners' damages were a result of this design defect.
In Winterrowd v. Travelers Indem. Co., 452 So.2d 269, 273 (La.App. 2d Cir.1984), writ denied, 457 So.2d 1195 (La.1984); writ granted, 457 So.2d 1185 (La.1984), affirmed, 462 So.2d 639 (La.1985), the court, in discussing the basis of a manufacturer's liability, stated that:
"A manufacturer is liable for injuries caused by the defective products it manufactures when such injuries are caused by the product's defective qualities and occur in the normal use or application of the product. A product is defective when it is unreasonably dangerous in normal use. In order to prevail in a products liability suit, a plaintiff must establish that the product is defectiveunreasonably dangerous in normal use, and that his injuries were caused by the product's defects in the course of the product's normal or intended application. DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981); Philippe v. Browning Arms Co., 395 So.2d 310 (La. 1981); Weber v. Fidelity & Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754 (1971); Llewellyn v. Lookout Saddle Company, 315 So.2d 69 (La. App. 2d Cir.1975)."
As to the burden of proving such causation, this Court in Thompson v. Tuggle, 486 So.2d 144 (La.App. 3d Cir.1986), writ denied, 489 So.2d 919 (La.1986), said:
"The burden of proving causation in products liability cases was clearly stated in DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981) as follows:
"[The] plaintiffs' burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct or, as in this case, by circumstantial evidence. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963).
Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, *979 that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation. Weber v. Fidelity & Cas. Ins. Co. of N.Y., 259 La. 599, 608-09, 250 So.2d 754, 757 (1971)."
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for its findings, a reviewing court should not disturb this factual finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The cause-in-fact of an injury is a factual question and the trial court's determination will not be disturbed unless it is manifestly erroneous. Prudhomme v. Nationwide Mut. Ins. Co., 465 So.2d 141 (La.App. 3rd Cir.1985), writ denied, 467 So.2d 1132 (La.1985)."
The trial court's findings of fact concerning the cause of the accident, are in pertinent part, as follows:
"Excessive flapping is one of the characteristics of the teetering rotor system of the Bell 47 Helicopter. The Bell Helicopter was designed defective in that the attach bolt on the dynamic flap restrain assembly which sheared was not properly tested and drafted to withstand the load of stress reasonably to be expected while the craft was in normal flight use. The failed attached bolt should have been designed to carry far more stress that it was capable of doing; also the unit could have been designed so that the fork or other heavy framing would have absorbed some of the stress which was transmitted directly to the attached bolt whenever excessive flapping or mast bumping occurred while the helicopter was in flight. The Norris helicopter was manufactured and sold by Bell in 1963. The unit had been transferred to various owners and along the way a No Bar Kit had been installed in place of Bell's original stabilizer bar. In spite of alterations the Bell 47 Helicopter remained a Bell product until the day of the crash in 1980. The no bar kit had nothing to do with the accident; had the rotary blade tips been weighted, that would have had nothing to do with the accident, in fact the blade tips were not weighted. In addition to the helicopter remaining a Bell product, the particular failed parts which caused the accident were Bell products. Because of design defect the sheared attach bolt which first gave way was not strong enough or protected enough to withstand the excessive flapping or mast bumping to which it was subjected in normally anticipated flight use. The sheared bolt was not broken by fatigue or excessive loads caused by misuse of the craft. The excessive bumping sheared the retaining bolt of one rabbit ear; one or both of the loosened rabbit ears flailed about hitting portions of the aircraft; one became embedded between the control rod the jack shaft and part of the frame thus locking the aircraft controls. The helicopter nosed down, rolled over and crashed. At the time of the accident, the Bell Helicopter owned by Norris, was in normal use; the defective design caused a bolt to shear off and a part of the rotating system to fall into the bubble (cockpit) and jam the controls. There was no pilot error involved. Bell, as manufacturer, had constructive knowledge of the design defect imputed to it by law; in addition to that presumed knowledge, Bell had actual knowledge of the mast bumping problem in the 60's and failed to solve the problem or take any corrective action. Bell was positively negligent in failing to warn civilian users of the defective helicopter of the dangers inherent in its continued use."
We find, after careful review of the voluminous record of testimony and numerous exhibits in this case, both of which are of a highly technical nature, that the plaintiffs failed to prove by a preponderance of the evidence, either direct or circumstantial, that a defect existed which was the cause-in-fact of the accident. Taking all of the evidence as a whole, we find that the trial court was clearly wrong in its factual *980 findings and in accepting, in toto, the opinion of the plaintiffs' experts.
Plaintiffs attempted to establish by way of expert testimony, physical and documentary evidence, that the crash of the helicopter was caused by the failure of the "dynamic flap restraint assembly" from "excessive flapping," and that "excessive flapping" was a design defect in the Bell 47 helicopter. This assembly is manufactured by Bell for the purpose of restraining or restricting the flapping of the blades in low rotor rpm on the Model 47 helicopter. The Model 47 is a two-bladed teetering rotor system with this restraint assembly located on the top of the rotor system. For an overall view of the type of helicopter which was involved in these cases (a Bell Model 47 G 2A1), we include a photograph of such a helicopter while in flight and which is designated as Exhibit A. A shaft is shown rising from the motor. Two rotor blades extend from the top of the shaft; the shaft is sometimes referred to as the mast. Below the rotor blades and at right angles, more or less, are two shorter blades referred to as the stablizer bar. Above the rotor blades certain apparatus may be seen; the apparatus includes two "rabbit ears" known variously as flap restraints or bumper arms.
According to the more technical nomenclature the rabbit ears are a part of the "dynamic restraint assembly." Exhibit A shows the location of the rabbit ears. Exhibit B (a diagram) and Exhibit C (a photograph) depict the rabbit ears in a larger scale and show their location with reference to other parts at the upper terminus of the mast. Pertinent in this connection is a part which is called the attach bolt, a bolt device which holds the rabbit ears in place.
It is undisputed that both rabbit ears on the Norris helicopter sheared off at some time either at the commencement of the accident or during events which took place as the aircraft appeared to go out of control, descended to the ground and crashed upside down. An official NTSB investigation was launched after the crash. Experts participating in this investigation concluded that a fatigue failure occurred in certain parts of the lateral control jackshaft or torque tube. Plaintiffs vigorously reject this finding as the cause-in-fact of the aircraft's loss of control. Plaintiffs contend that this particular failure occurred upon impact in the crash. Instead, their theory of causation was that a condition of "excessive flapping" sheared the bolts of the dynamic flap restraint assembly causing the weights or "rabbit ears" to fly off. Only one of these "rabbit ears" was recovered, and it was found at a location approximately 125 feet from the site of impact. The expert witnesses theorized that this "rabbit ear," after it broke off, fell through the helicopter blades down behind the fire wall of the cockpit and into the aircraft controls. This "rabbit ear" then wedged itself into the controls, jamming the pilot's control, resulting in loss of control of the helicopter and its subsequent crash.
Plaintiffs' witness, Dr. Gibson, testified that if the "rabbit ears" came off and were "slung out," probably nothing would happen except a slight imbalance. Plaintiffs' theory of causation and its relation to an alleged design defect is therefore dependent upon one of these "rabbit ears" becoming wedged up against a control rod or jackshaft. According to plaintiffs, it was this phenomenon of "excessive flapping" which was the defect that ultimately caused the crash.
The defendants did not deny the evidence of "excessive flapping" seen on parts of the dynamic flap restraint assembly or the fact that its bolts sheared due to this "excessive flapping," but herein lies the failure of plaintiffs' proof. What caused this phenomenon known as "excessive flapping" to occur? Therein lies the answer to the cause of this crash. It is not enough for plaintiffs to speculate or hypothesize as to the "rabbit ear" wedging in the control due to a bolt shearing. In the plaintiffs' estimation the bolt was inadequate to withstand this "excessive flapping." Nevertheless, it was not shown that "excessive flapping," such that would cause the bolts to *981 shear, occurred in the normal use of the helicopter.
From all of the testimony and evidence, it is clear that "excessive flapping" is a result or effect of some other condition or occurrence. Defendants' argued that "excessive flapping" did not cause this accident and that "excessive flapping" is a result of some condition outside of the normal use of the helicopter. Defendants maintained also that even if this aircraft were being operated within its normal flight envelope (prescribed limits and usages), as originally designed, the effect of so many major repairs and alterations to the original design so impaired the capabilities of the aircraft, by creating added stresses and loads not accounted for by Bell, that anything could have happened.
The plaintiffs introduced into evidence two lengthy reports prepared for the United States Army by Bell on rotor blade flapping of the Army's two-bladed teetering rotor helicopters.[2] These reports confirm a known problem in certain teetering rotor systems, those being of military design and usage and occurring under certain conditions. Plaintiffs failed to show that there was a similar problem in Model 47 helicopters.
The Army reports, when examined in their entirety, and though they concern other and different aircraft, do not support the plaintiffs' theory of causation. They tend rather to support the evidence that other factors not attributable to design, composition, or manufacture by Bell, contributed to or caused this crash.
There was no showing by plaintiffs that any prior accidents involving military helicopters were so closely related in circumstances to the injuries or hazard at issue in this case so as to be admissible for the limited purpose of showing notice. The trial court erred in allowing evidence and testimony concerning other accidents absent the necessary foundation establishing the facts and circumstances of a similar nature surrounding the other accidents. See Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182, 1188 (La.App. 1st Cir.1984), writ denied, 458 So.2d 476 (La.1984).
The trial court was clearly wrong in according any weight to these documents in finding a defect and a failure to warn.
The United States Fifth Circuit Court of Appeal in its discussion of a manufacturer's liability in Scott v. White Trucks, 699 F.2d 714, 717 (5th Cir.1983), said:
"[r]ecovery is allowed against the manufacturer only `if the injured person proves ... that the product was defective when it left the hands of the manufacturer,' and `[w]hile the rule [of strict liability] is harsh, liability is not imposed unless the evidence preponderates ... that the [injury-causing] defect existed when the product left the hands of the manufacturer.' Madden v. Louisiana Power and Light Co., 334 So.2d 249, 253, 255 (La.App. 4th Cir.1976)."
"However, the manufacturer is under no duty `to make a product that will last forever or will withstand abuse or lack of maintenance' or that is `foolproof,' Tri-State Insurance Company v. Fidelity & Casualty Insurance Company, 364 So.2d 657, 660 (La.App. 2d Cir.), writ denied, 365 So.2d 248 (La.1978); Foster v. Marshall, 341 So.2d 1354 (La.App. 2d Cir.), writ ref'd, 343 So.2d 1067, 1077 (La.1977), nor one whose component `parts do not wear out.' Insurance Company of North America v. Atlas Construction Company, 368 So.2d 1247, 1249 (La.App. 4th Cir.1979); Foster v. Marshall, supra. And, where a particular defect or dangerous condition is not directly shown to exist at the time of manufacture, and the product abnormally malfunctions, or even is directly shown to have a defective component, on *982 the occasion of an accident occurring a significant time after manufacture, this will not alone authorize a finding that the product was defective while in the manufacturer's hands, if maintenance and employment by intervening owners and users is not adequately accounted for. See Simon v. Ford Motor Company, 282 So.2d 126, 128, 132-33 (La.1973); Penton v. Budget Rent-A-Car, 304 So.2d 410 (La.App. 1st Cir.1973); Farmer v. Ford Motor Company, 316 So.2d 140 (La.App. 2d Cir.1975)."
For the plaintiffs to carry their burden of proving (1) a defect and (2) causation of plaintiffs' harm by that defect by a preponderance of the evidence, all of the direct and circumstantial evidence presented by the plaintiffs, when taken as a whole, must exclude other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that the decedent's harm was caused by a product defect attributable to the defendant manufacturer, and that no other factor can as reasonably be ascribed as the cause. See Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir. 1977), writ denied, 342 So.2d 872 (La.1977); writ denied, 342 So.2d 1109 (La.1977).
Considering all of the evidence before us, we find that the plaintiffs failed to prove by a preponderance of the evidence that any defect existed in Bell's design, composition or manufacture of the Model 47G2-A1 at the time that it left Bell's hands. The evidence presented failed to exclude other reasonable hypotheses with a fair amount of certainty. We feel that other factors can as reasonably be ascribed to the cause.
Even if we were to find some defect in Bell's design, composition or manufacture of the Model 47G2-A1, we find that the plaintiffs never proved the cause of the helicopter crash. All that plaintiffs ever brought forth at trial was a theory as to how the accident occurred. In his brief, counsel for the Turner group candidly refers to plaintiffs' explanation as to how or why the accident happened as a theory. The required proof is the well-established more probable than not standard. Jordan v. Travelers Insurance Co., 245 So.2d 151 (La.1971). A theory is a mere possibility and a possibility is all plaintiffs offered. The possibility offered is not supported by any facts which would bring it within the category of probability and certainly not within the more probable than not rule.
We summarize our conclusions as follows:
1. The question of whether the helicopter in question may be considered as a "Bell product" is not necessary to a determination of the liability issue of these two cases.
2. Plaintiffs failed to prove by a preponderance of the evidence that "excessive flapping" was a phenomenon which would occur in the normal use of the Model 47G2-A1 such as to render it unreasonably dangerous in normal use and therefore defective.
3. Even assuming that there was a design defect in the 17-year-old Bell helicopter centered in the attach bolt and rabbit ear assembly which caused the bolt to shear from "excessive flapping" resulting in the loss of the rabbit ears, this alone would not cause the helicopter to go out of control. The testimony most favorable to plaintiffs in this regard was to the effect that loss of the rabbit ears would be nil except for a slight imbalance.
4. That the rabbit ear became lodged in the aircraft controls is merely speculative and highly conjectural. For these reasons the trial court's finding of any design defect or failure to warn of a defective condition would be immaterial.
5. The cause-in-fact of the crash of the Bell helicopter is unknown and was not proved, even under the liberal standard of Jordan v. Travelers Insurance Co., supra.
6. The trial court's conclusions in the Turner case were manifestly erroneous; the result reached in the Norris case was correct.
We fully realize that these cases involve an intricate technology and that the trial involved much expert testimony and technical *983 explanations concerning the mechanism of the helicopter in question, as well as the phenomena of aerodynamics of helicopter flight. Diligent counsel have not stinted in their briefs both as to the technology involved and the law of products liability. The record reveals that counsel made thorough preparations for trial and conducted the trial in a most vigorous, and we might say unrelenting, manner. In not burdening this opinion with the detail reflected in the expert testimony, briefs and oral argument, we do not ignore it. Rather we have endeavored to view the whole record to discover the contour of the forest rather than engage in a fruitless examination of the trees in isolation to one another. The truth at which we arrive is that no one knows why the Bell helicopter went out of control and crashed. This being so, the plaintiffs failed to carry their burden of proof. The trial court committed manifest error in concluding otherwise.
For the foregoing reasons we affirm the judgment in this case in favor of Bell Helicopter Textron, Inc. which rejects the demands of plaintiffs, Sheila Norris, the Estate of Ted Norris, Jr. and Mr. and Mrs. Theodore Norris, Sr.
The costs of this appeal are assessed one-half to plaintiffs-appellants in this appeal. The other one-half will be assessed to the plaintiffs-appellees in the companion suit of Betty L. Turner v. Bell Helicopter Textron, Inc., supra, number 85-1051 on the docket of this Court.
AFFIRMED.
*984 
*985 
*986 
NOTES
[1] In the Norris suit the plaintiffs are Sheila Norris, widow of the decedent, Theodore Norris, Jr. and Mr. and Mrs. Theodore Norris, Sr., owners of the helicopter in question. They also sued Jarrel Ward and Campbell & Ward Helicopter Service, Inc., Ward and Campbell, L.C. "Buster" Campbell, and Louisiana Insurance Guaranty Association, who were dismissed on a directed verdict at the close of plaintiffs' case, and the Estate of Richard Turner. Plaintiffs have not appealed the directed verdict. It is final as to those parties. The jury verdict found no negligence on the part of Richard Turner. That is not appealed.

In the Turner suit, the plaintiffs are Betty L. Turner, widow of the decedent, Richard E. Turner, and his three major children, Chris Turner, Teri Turner, and Jane Turner. They also sued Theodore Norris, Sr., d/b/a Tell-Ag Service.
[2] Bell Helicopter Textrons, Rotor Blade Flapping Criteria Investigation (December 1976) (on file in the National Technical Information Service, U.S. Depart. of Commerce).

L. Dooley, S. Ferguson, III, Effect of Operational Envelope Limits on Teetering Rotor Flapping (July 1978) (on file in the National Technical Information Service, U.S. Dept. of Commerce).