**Pam Picard BOUILLION, et al.**

v.

**ELI LILLY & COMPANY.**

**Civ. A. No. 86–3437–O.**

United States District Court,
W.D. Louisiana,
Opelousas Division.

Jan. 13, 1988.

Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Sera H. Russell, III, Emile Joseph, Jr., Lafayette, La., for plaintiffs.

Juneau, Hill, Judice, Marquet, Hill & Adley, Patrick A. Juneau, Lafayette, La., and Shook, Hardy & Bacon, Laurel J. Harbour, James A. Wilson, Kansas City, Mo., for defendant.

RULING

NAUMAN S. SCOTT, District Judge.

This matter is now before us on a Motion for Summary Judgment filed by defendant, Eli Lilly & Company ("Eli Lilly").

This prescription drug product liability action was originally brought by plaintiffs in state court in October 1986. Shortly thereafter, defendant removed the action to this court pursuant to 28 U.S.C. §§ 1332, 1441.

In their Complaint, plaintiffs allege that they have sustained injuries as a result of plaintiff Mary Rose Picard's ingestion of the drug, synthetic estrogen diethylstilbestrol ("DES"). Plaintiffs claim that Mrs. Picard took DES in 1960 while she was pregnant with her daughter, Pam Picard Bouillion. Her physician allegedly prescribed the drug in order to prevent a possible miscarriage. Plaintiffs further claim that the DES was manufactured by defendant Eli Lilly.

Eli Lilly moves for summary judgment on the ground that plaintiffs are unable to establish that Mrs. Picard took DES during her pregnancy in 1960. Because plaintiffs are unable to prove an essential element of their claims against defendant, i.e., that defendant's product caused plaintiffs' injuries, Eli Lilly argues it is entitled to a summary judgment as a matter of law.

FACTS:

During 1959, Mary Rose Picard became pregnant and miscarried shortly thereafter. In the spring of 1960, Mrs. Picard notified her obstetrician/gynecologist of her belief that she was pregnant. A pregnancy test was taken, and on April 9, 1960, Mrs. Picard was informed by telephone that the results of the test were positive.

At her deposition, Mrs. Picard testified that when her physician initially told her by telephone about the results of the pregnancy test, he also prescribed certain medication for her to begin taking.[1] Deposition of Mary Rose Picard at 49–52. During the conversation she was not told the name of the medication, but simply that it was being prescribed in order to help prevent a miscarriage. *Id.* at 53. Mrs. Picard was unable to recall anything more about the prescribed medication, such as its physical appearance, or about the container in which it came. *Id.* at 53–55. However, it is "her opinion" that the drug prescribed for her was DES. *Id.* at 52.

Dr. Stanley Morgan, the primary Ob/Gyn physician that treated Mrs. Picard during 1960, testified that he could not recall what medications he may have prescribed for her that year. Deposition of Stanley Morgan, M.D. at 26. He stated that he had prescribed DES for some of his patients during the 1950's, but he quit prescribing the drug around 1959. *Id.* at 53, 65, 69. He also remarked that if he did prescribe DES for a patient's use, it was usually because that particular patient had already experienced two or three miscarriages in a row. He generally would not prescribe DES to a patient that had experienced only one miscarriage. *Id.* at 55, 71–72. Furthermore, when he did prescribe DES, he would do so as soon as the pregnancy was diagnosed. He would not prescribe DES as late as one month after the pregnancy had been diagnosed. *Id.* at 56, 67–69.

Certain medical records pertaining to Mrs. Picard's obstetric and gynecology care were kept primarily by Dr. Morgan and also by other Ob/Gyn physicians who practiced in association with him. An entry in those records indicates that on April 9, 1960, a "frog test" showed that Mrs. Picard was pregnant. The entry also shows that two medications were prescribed for her on that date—Hesper-C, which was a miscarriage preventative, and Maredox, which was for control of nausea. Exhibit B to Defendant's Motion for Summary Judgment, "Medical Records for Mary Rose Picard"; Morgan, *supra* at 20–22. The records also contain an entry which indicates that Mrs. Picard's first obstetric visit was on May 9, 1960. Dr. Morgan testified that any entries pertaining to Mrs. Picard's treatment on May 9, 1960 and thereafter, until she gave birth to her daughter in December, 1960, would have been recorded in a separate "obstetric record". Morgan, *supra* at 22–23. The obstetric record for Mrs. Picard has report-

---

1. Mrs. Picard believes that Dr. Stanley Morgan was the physician who telephoned her and prescribed the medication for her. Deposition of Mary Rose Picard at 49–50; however, Dr. Morgan testified that his partner, Dr. O.T. Daley, III, probably spoke with Mrs. Picard by telephone on April 9, 1960 and prescribed the medication. Deposition of Stanley Morgan, M.D., at 14, 20, 23–24. Dr. Morgan's version of the facts is not wholly inconsistent with Mrs. Picard's testimony. *See* Picard, *supra,* at 48–49.

edly been lost. *Id.* at 7. The only other significant entry in Mrs. Picard's medical records is regarding a date between April, 1980 and February, 1981. Dr. Morgan testified that he made that entry pursuant to a telephone call he received from Mrs. Picard. *Id.* at 27–28. She called to inquire whether she had been given DES while pregnant with her daughter, Pam. Upon reviewing Mrs. Picard's records, Dr. Morgan was unable to find any indication that DES was ever prescribed for her. *Id.* Based upon this finding, Dr. Morgan concluded that Mrs. Picard had not been prescribed DES while pregnant in 1960 and responded *"No"* in response to her inquiry.[2] *Id.* at 28–30.

There are no longer any prescription or other pharmacy records which would indicate whether DES had been prescribed to Mrs. Picard. Defendant's Memorandum in Support of Motion for Summary Judgment at 7. Remy Guidry, the pharmacist which Mrs. Picard used in 1960, testified that he cannot recall ever filling a prescription for DES for Mrs. Picard, and he does not know whether she has ever taken that drug. Deposition of Remy Guidry at 50. Likewise, Mrs. Picard's husband, Patrick Picard, has no independent knowledge of whether she was given DES. Deposition of Patrick R. Picard.

Plaintiffs have introduced certain medical records of Pam Picard Bouillion in order to show that she has been diagnosed as having "a t-shaped uterus, a non-filling right fallopian tube, and a partial filling and no spillage of the left fallopian tube, *all of which were attributable to the result of maternal DES exposure.*" Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 4 (emphasis added). Defendants, on the other hand, have introduced affidavits of two of Pam Bouillion's treating physicians attesting that the types of problems or conditions which she has occur in women who have not been exposed to DES in utero, as well as in women who have had such exposure. Exhibits G and H to Defendant's Reply Memorandum, "Affidavit of Dr. James L. Zehnder" and "Affidavit of Dr. Truman P. Hawes, Jr.". Both doctors state that they have no personal knowledge whether Pam Bouillion was exposed to DES in utero, and furthermore, it is not their opinion that she was in fact exposed to DES in utero. *Id.* Dr. Hawes also states that "Pam Bouillion informed me that she had been exposed to DES in utero as part of the history she provided in the infertility work-up." Affidavit of Dr. Truman P. Hawes, Jr., *supra.*

THE LAW:

A. *Summary Judgment.*

Rule 56(c) authorizes summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a properly supported Motion for Summary Judgment has been made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]he question whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569, 575 (1968). In considering the evidence and the factual inferences arising from it, all reasonable doubt should be resolved in favor of the non-movant. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962); *Anthony v. Petroleum Helicopters, Inc.,* 693 F.2d 495, 496 (5th Cir.1982).

---

**2.** The entry in the medical records reads:
"[phone call:] Asked about DES [with] daughter Pam—*No* Medical Records for Mary Rose Picard, *supra;* Morgan, *supra,* at 28."
Dr. Morgan explained that this notation means that, at the time, he consulted Mrs. Picard's gynecology and obstetric records and found no indication that DES had ever been prescribed for her during 1960. Morgan, *supra,* at 28–30. He stated that by underlining the word "No" in the entry, he was being "very emphatic" about his response. Therefore, he reasoned that he must have checked Mrs. Picard's obstetric record in order to arrive at his response. *Id.* at 63.

Rule 56(c) by its very terms "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Factual disputes must be "material" to the outcome of the action in order to preclude summary judgment. Factual disputes that are "irrelevant or unnecessary" to the outcome or "merely colorable" will not be considered. *Id.* Additionally, the non-movant "must do more than simply show that there is some metaphysical doubt as to the facts." *Matsushita Electronic Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12.

Therefore, the threshold inquiry to be applied by the Court under Rule 56 is whether a genuine issue of material fact remains for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by finder of fact because they may reasonably be resolved in favor of either party." *Id.* 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 213.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court pointed out that while the moving party has the burden of showing the non-existence of any issue of material fact, this burden may be discharged by showing that there is an *absence of evidence* to support the non-movant's case. In *Celotex*, the defendant, Celotex Corporation, moved for summary judgment against plaintiff on the ground that she was unable to produce evidence in support of her allegation in her wrongful death complaint that the decedent had been exposed to defendant's asbestos products. The district court granted summary judgment for defendant; however, the court of appeals reversed, holding that defendant had failed to support its motion with evidence tending to *negate* such exposure. The Supreme Court reversed and remanded the matter to the court of appeals. The Court held that Fed. R.Civ.P. 56 does *not* require the moving party to support its motion with affidavits or other similar materials negating the opponent's claim. In reaching its decision, the Court reasoned that summary judgment "may, and should, be granted," regardless of whether the moving party accompanies its motion with affidavits, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c) is satisfied." *Id.* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The Court further stated:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

### B. *Plaintiffs' Products Liability Claims*

In a products liability action brought under Louisiana law, the plaintiffs claiming injury have the burden of proving that the product was defective, i.e. unreasonably dangerous to normal use, and that the plaintiffs' injuries were caused by reason of the defect. *Weber v. Fidelity & Casualty Insurance Co.*, 259 La. 599, 250 So.2d

754 (1971); *Henley v. Sterling Drug, Inc.*, 489 So.2d 1338, 1340 (La.App. 1st Cir.1986); *Moore v. Aetna Casualty & Surety Co.*, 454 So.2d 1273, 1278 (La.App. 2nd Cir. 1984). *Accord, Winans v. Rockwell International Corp.*, 705 F.2d 1449, 1456 (5th Cir.1983); *Scott v. White Trucks*, 699 F.2d 714, 716 (5th Cir.1983); *Porter v. American Optical Corp.*, 641 F.2d 1128, 1138 (5th Cir.1981); *Breazeale v. B.F. Goodrich Co.*, 564 F.Supp. 1541, 1544, (E.D.La.1983). Whether defendant's liability is based upon strict products liability or negligence, the plaintiffs must prove by a preponderance of the evidence that their damages were proximately caused by the defendant's product. *Angelle v. Southwest Louisiana Electric Membership Corp.*, 471 So.2d 1060 (La.App. 3rd Cir.1985). Plaintiffs may show causation by direct or circumstantial evidence, and such evidence need not negate all other possible causes. *Porter*, 641 F.2d at 1142. However "[the] evidence, presented by the plaintiffs, when taken as a whole, must exclude other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that the [plaintiffs'] harm was caused by a product defect attributable to the defendant manufacturer, and that no other factor can as reasonably be ascribed as the cause." *Norris v. Bell Helicopter Textron*, 495 So.2d 976, 982 (La.App. 3rd Cir. 1986), *cert. denied*, 499 So.2d 85 (La.1987) (citing *Welton v. Falcon*, 341 So.2d 564 (La.App. 4th Cir.), *writ denied*, 342 So.2d 872 and 342 So.2d 1109 (La.1977)). *See also Angelle*, 471 So.2d at 1062.

Therefore, in ruling on the Motion for Summary Judgment before us, we "view the evidence presented through the prism of the substantive evidentiary burden" outlined above. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513, 91 L.Ed.2d at 215.

We think it is clear that plaintiffs have failed to make a sufficient showing, which, even after reasonably resolving inferences in plaintiffs' favor, would enable a jury to reasonably conclude that Mrs. Picard ingested DES during 1960. Plaintiffs primarily rely on Mrs. Picard's uncorroborated opinion that Dr. Morgan prescribed DES for her. However, both Dr. Morgan's testimony and Mrs. Picard's medical records negate, rather than support, her opinion.

Although Mrs. Picard was given prescribed medication on April 9, 1960 to help prevent a miscarriage, her medical records indicate that this medication was Hesper–C, *not* DES. Dr. Morgan testified that had DES been prescribed for Mrs. Picard, then it also would have been prescribed on April 9, 1960 when the pregnancy was initially diagnosed. No such entry appears in her medical records for that date, or for any other date. It is unlikely that Dr. Morgan would have prescribed DES later during Mrs. Picard's pregnancy, even a month after the initial diagnosis was made. Dr. Morgan stated that it was not his general practice to prescribe DES to a patient, such as Mrs. Picard, who had experienced only one miscarriage; rather, he would more likely prescribe another medication such as Hesper–C. Furthermore, Dr. Morgan stated that he quit prescribing DES around 1959. Finally, Dr. Morgan concluded at some time in 1980 or 1981, after reviewing Mrs. Picard's medical records, that she had not been given DES in 1960.

Plaintiffs also rely upon the medical records of Pam Picard Bouillion for the proposition that her infertility problems were caused by maternal DES exposure, and that, therefore, Mrs. Picard must have been given DES. Defendants, however, have shown through affidavits from Pam Bouillion's treating physicians that her infertility problems may also have resulted without DES exposure in utero. When taken as a whole, plaintiffs' evidence simply does not "exclude other reasonable hypotheses with a fair amount of certainty." *Norris, supra.* Plaintiffs are required to show more than "some metaphysical doubt" as to the facts. *Matsushita, supra. See Jones v. Abbott Laboratories*, No. A033097 (Cal.App., Oct. 26, 1987) (physician's declaration that plaintiff's medical problems were consistent with maternal DES exposure simply infers that plaintiff's mother *may* have taken DES. That inference does not contradict defendants' evidence that there were many medications on

the market to prevent miscarriages other than DES when plaintiff's mother was pregnant).[3]

Having found that plaintiffs have failed to make a sufficient showing concerning an essential element of their case, i.e., that their damages were proximately caused by Mrs. Picard's ingesting DES during her pregnancy in 1960, we hold that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law, dismissing plaintiffs' claims. Accordingly, we GRANT the Motion for Summary Judgment.

---

**3.** In *Jones,* a case with very similar facts, the California Court of Appeal found that the plaintiff could not demonstrate that her mother took DES during her pregnancy, and, accordingly, affirmed the lower court's grant of summary judgment dismissing plaintiff's complaint.